Good afternoon ladies and gentlemen. The case for this afternoon is United States v. Turner. May it please the Court, Counsel. Your Honors, ever since the United States Supreme Court has decided Cheeks v. United States and Ratliff v. United States, the U.S. Supreme Court has required that certain criminal laws with a mens rea of willfulness requires that the accused have knowledge of the law that he's accused of violating. This Court, the Seventh Circuit, has continued that holding in United States v. Dobeck as recently as 2015 and United States v. Pongin. And the Dobeck Court stated, especially when the law is a regulation rather than a statute, the defendant might not be aware of the regulation. Now the Dobeck Court did not reverse the conviction because Dobeck clearly knew about the international trafficking and arms regulations. Dobeck was selling products to Venezuela. He provided the seller confirmation that he knew about the international trafficking and arms regulations and he confirmed that he would obtain any licenses prior to approval, prior to him exporting to Venezuela. In this case, Your Honors, this is a regulation. It's a very remote regulation prohibiting services on behalf of a specially designated national. I think what we need to look at is the Dixon case. Unless the statute dictates a different result, willfulness requires only that the defendant have acted with The more restrictive interpretations of willfulness are employed in certain statutes which are particularly complex and like some of the tax statutes. Well this isn't particularly complex. No it is not, exactly. It's a regulation and as this Court has indicated, regulations are more susceptible to innocent state of minds where people are not aware of the statute that is being violated, Your Honors. And I think even the Bryan case specifically makes mention of, in Judge Scalia's dissent, for example, that knowledge, the courts, with respect to the Judge Scalia's dissent, he was saying the knowledge of any law is not enough. You can't just say that... You don't expect us to go along with dissent, do you? No, no, no. If so, I'd be the most famous judge in America. Well, but that case was followed by other, the Seventh Circuit's opinion in Dolbeck. And Dolbeck was not a particularly complex statute. It was just a violation of the international trafficking arms regulation. Look, Bryan tells us that knowledge that the conduct is unlawful is all that is required to demonstrate willfulness, not knowledge of the specific legal provision. But that seems to run afoul with other Supreme Court decisions, Your Honor. I mean, Cheeks was just a tax case. Ratzliff was just a structuring case. And we still maintain that in structuring cases, defendants have to have knowledge of the structuring. And that is more in the common parlance today about structuring. With respect to services being performed on behalf of an individual, such as it is generally lawful to provide services to any person. The statute prohibits legal, accounting, freight forwarding, or other services. Generally performing services on behalf of people is lawful. The regulation prohibiting services on behalf of a specially designated national is so unique that willfulness, the mens rea as to willfulness should absolutely require knowledge of that particular law. It follows many, many statutes, and Pulligan itself was not a particularly complex statute. I think that in light of the particular statute, in light of the regulation that is not in the common parlance in any respect, very, very few people know that the services on behalf of specially designated nationals, very few people would even know what a specially designated national is. So surely, with respect to this statute, I think that the law requires that individuals have to violate, knowing the actual statute that they're accused of violating. I think it can be seen in the prosecutor's actual statement to the court in the jury instructions, the mistaken belief where the prosecution said, if the defendant believes he is violating Law A, but is actually violating Law B, he's still violating the law. So we're not saying he's violating Zadira, but if he believes he's violating Zadira, and he's wrong about which law he's violating, he still knows he's violating the law, and he's acting lawfully. I submit that that's an absolute incorrect statement of the law. There was evidence of what's there was, as was cited in the brief, there was references to that particular law or regulation. And if the defendant thinks he's violating the wrong law, he shouldn't be held accountable for the law that he was charged with violating. And, Your Honor, with respect to what you indicated to me, there is a rule that the statute doesn't specifically lay out willfulness. And the rule of leniency still applies. When their statutes are ambiguous, clearly they have to be decided in favor of the accused. This statute doesn't lay out the actual definition of willfulness. And as Justice Scalia said, in our society of multiplying new federal crimes, there's more reason than ever to give this ancient form of construction consistent application. The rule of leniency, at a minimum, with respect to this particular statute, should apply as to the definition of willfulness. Did your client, I assume you're appellate counsel and you were not trial counsel? I was a trial counsel also. You were trial counsel. Did you propose an alternate jury instruction that was keyed to the statute and the regulations? We absolutely did. We were alerted to this issue well before trial, and we presented to the court a very clear instruction that the state attorney must act with the intent to do something the law forbids, either to disobey or disregard the law regarding providing services to specially designated national. That was provided to the court well in advance of trial. We argued for that instruction at the jury instruction conference, and in fact, the court gave an opposite instruction that the state attorney need not be aware of the specific law or rule that his conduct would violate. In other words, a defendant does not have to know this conduct would violate a particular law. And again, I think in light of the statute, in light of Supreme Court precedent, in light of this court's opinion in other regulatory cases such as this, surely willfulness should continue to be defined as having knowledge of the law that the accused is accused of violating. So you don't object to jury instruction number 24, right? That's the general jury instruction on count three, including its willfulness requirement. Well, we objected to the jury instruction that was given as to willfulness. I'm not sure which instruction was number 24, but we proposed a completely different instruction as to willfulness. Our instruction was completely in opposite of the instruction that was given by the district court. Well, what I'm referring to is a general instruction on willfulness as used in count three, and that's jury instruction number 26. Jury instruction number 24 instructed the jury on the general elements of the count that was alleged in count three of the indictment, including its willfulness requirement. And it seems to me that is straightforwardly an accurate statement of the law. It says that the indictment charges the defendant with willfully conspiring to provide services on behalf of and for the benefit of specially designated nationals. Then it lists them without first having obtained a license, and that the elements of that offense include the agreement, number one, and that the defendant knowingly and willfully became a member of the conspiracy with intent to further its unlawful purpose. In other words, with intent to further its purpose of providing services to a specially designated national. As far as that particular instruction, we also objected to that particular instruction. The court, and that's a separate issue, your honor, if you recall, there was three individuals listed that Turner was accused of conspiring to provide services on behalf of. They were the president of Zimbabwe, Robert Mugabe, the finance minister, Gideon Gono, and Simon, excuse me for mispronunciation, Moyo. There was three individuals listed. They, the government... What did you call him? Moyo? There was... Mubengegwe. Mubengegwe was added, but he was, and that was our position that it was constructively amended. Right, his role is described earlier in the indictment and incorporated by reference. Well, it was simply one line. He wasn't alleged to have been one of the individuals Turner conspired to provide services on behalf of. He was just listed in count one, and that was conspiring to act as an agent of a foreign government. And that's really how we defended the case. And we defended the case thinking that Mubengegwe was only part of the count one, which was acting... Our client was accused of acting as an agent of a foreign government, which he was acquitted of. But they, the government added Mubengegwe's name. I specifically stated that the name should mirror the indictment, and Mubengegwe's name was added to the particular jury instructions. Well, your client knew that he was committing bad acts, right, with regard to this? Well, I would disagree with that. I think that he thought there was economic sanctions imposed against the country, the Republic of Zimbabwe, which prohibited any economic transactions in Zimbabwe. Whether that was a bad act, I... Well, I mean, what would you call it? Judge, I wouldn't call it, your honor, a bad act. I mean, I think they believe... Well, okay, because it doesn't fit, but in fact it was. He did know he was committing bad acts. I think that they believe there was economic... He believed there was economic sanctions imposed against the country that no economic transaction could occur with the Republic of Zimbabwe. But there's no need to... He doesn't need to know the specific language that made it a bad act, does he? Well, that's our position is absolutely. He was charged with violation of a specific regulation, and that regulation is contained in thousands of pages of the CFRs, and there's hundreds of thousands of specially designated national... How does this supposed to know criminal law? It differs just like rats... I mean, realistically. Just like rats' lips differ, just like cheeks differ, that we're not going to charge someone who has an innocent state of mind with the crime that they were committed. For example, the perfect example is the email that the government cites in their brief. They talk about the email that shows that he had a guilty state of mind, and they point to an email where Turner states that we have Richard Boykin's firm working on obtaining a travel visa for Gideon Gono, the specially designated national. Clearly, he was trying to comply with the law. If he was for Mr. Gono, who was on a travel ban, he was attempting to comply with the law in that respect, and there is absolutely no way that this could be considered a harmless error in any respect. I would just like to talk briefly about this consulting agreement that had no basis. We know that the consulting agreement, the signatures were forged. But why isn't the sequence of events regarding the $90,000 transfer of funds sufficient to authenticate that document? Well, first of all, our client didn't even know it was $90,000. He said it was $80,000. The sequence of events, you have to take the evidence as a holding arm. There was absolutely no corroboration in any other email or any other FISA call that there was some sort of agreement with the country of Zimbabwe. And there was thousands of emails, Your Honor, and there was thousands of FISA calls. So to pick out these particular events and to say that they somehow authenticate a document when there was no evidence that Monica Mutsumbagwa had any authority to bind the government of Zimbabwe, her signature was forged, everything in the agreement itself was incorrect. Yeah, but $90,000 came out of her bank account the next day. Well, it wasn't actually the next day, but our client didn't remove the money from Ms. Mutsumbagwa's account. It was the co-defendant, Ben Israel, who removed the money. Our client believed it was actually $80,000. Some of the issues cited that supposedly give it some credence are surely just mere coincidence. I mean, there was a meeting that occurred in Zimbabwe and they were with state senators and state representatives and the president of the Illinois Human Services. So to say that authenticated that particular document, Your Honor, given all the evidence in the case... Well, I mean, what the evidence does is it provides a context for that email that came out of Ben Israel's email account. Yes, Your Honor. But there was no other evidence to support any agreement with the country of Zimbabwe. There was, like I said, thousands of emails. We know that Ms. Mutsumbagwa's signature was false, that the signature of Ben Israel was false. And there was no evidence that they could even bind the government of Zimbabwe. Well, I think you're missing the point here. The government wasn't introducing the consultancy agreement as a binding valid contract with the government of Zimbabwe. It was introducing it as a co-conspirator statement. Ben Israel was trying to pass it off as a justification for the cash that he was receiving. Well, they always took the position that it was an authentic document, that it was actually... They didn't even use it. After we pointed out, it was only after we pointed out that the signatures were false, that the government changed its position with respect to that document. All throughout the case, throughout the motion... But they never relied on the signatures to authenticate that document. Well, Your Honor, I would submit that given the nature that that document wasn't what purports to be, and to give the jury that particular document is so prejudicial that there was no authenticity to the document, and our client had no involvement in the production or the signing or the false signing of that particular document... The evidence was that the distinctive payment structure in the agreement corresponded with the actions of these two men, were more coincidence in light of the evidence in the case, that there was no other evidence of any agreement with the Republic of Zimbabwe. I would just ask the court also to consider the fact that there should have been unanimity at a minimum as to which specially designated national turner conspired to provide its services for. The government introduced evidence of individuals who were specially designated nationals that were not named in the indictment, not at all. And so in light of that particular evidence that the government introduced people who were not named in the indictment, specially designated nationals, surely we believe that there should have been unanimity as to each of the specially designated national that he allegedly conspired to provide services for. Thank you, counsel. I'll give you a minute and rebuttal. Mr. Jonas? Thank you. Will you please report? My name is Barry Jonas. I represent the United States. Before you start your argument, let me, I'm sorry to do this, but what evidence is there in this case that Turner actually provided any services at all in return for payment or actually intended to do so? I mean, doesn't this look more like a con game that was aimed at obtaining money in return for no services at all? There were services provided. I'm not challenging your characterization that this may have been a con game. In fact, there was a phone call that the government played after the fact where the services performed in that the defendant arranged for multiple meetings between U.S. officials, including Illinois state officials and U.S. congressmen and members of the Zimbabwe government, all at the direction and for the benefit of the members of the Zimbabwe government. The defendant also obtained letters from U.S. politicians that the government omitted into all for the act of providing these services, specifically lifting the sanctions, U.S. sanctions against the government of Zimbabwe. That's what the defendant agreed to do on behalf of these special designated nationals. In fact, that's what he attempted to do. Whether or not this was a con game on his part, ultimately he still provided those services and carried forward on the acts that he represented he would do and for which he was paid. Turning to the willfulness issue, the jury instructions when read as a whole correctly stated the law. Turning to, as your honor did, jury instruction 24, that instruction told the jury what the defendant was charged with to start. It specifically told the jury that the defendant was charged with willfully conspiring to provide services to specially designated nationals and it identified four such nationals. It then told the jury that U.S. persons wherever located are prohibited from providing services to specially designated nationals. It also listed out an example of some services. So now the jury knows that U.S. persons cannot provide services to people who are designated. The judge then went into the case. They're not generic elements. The first element was that two or more U.S. persons agreed to provide services on behalf of and for the benefit of specially designated nationals. And then the second element, and this is where willfully comes in, is that the defendant knowingly and willfully became a member of the conspiracy with the intent to further the unlawful purpose. The jury, when you read the willfulness instruction, that's instruction 26, and you insert it here in this instruction as a jury should, because instructions are read as a whole, informs the jury that the defendant had to know that it was against the law to provide services to specially designated nationals, and in this case in particular, the four that were named in the instruction. Of course, that's not what jury instruction number 26 says. It's a freestanding instruction on willfulness more generally. And I agree, it has to be read in context with the substantive instruction on the elements of the offense. But I guess the argument that's being made is that it's confusing and suggests that they didn't need to know. In other words, that what instruction number 24 requires on its face, instruction number 23 takes away as a requirement. I would respectfully disagree that it takes it away. I think what instruction 26 does is it the defendant must know that his actions are intending to violate the law, and that's what it does. And I think it's important you do read them in tandem and not in isolation as the defendant proposes. The defendant's proposed language specifically said that those additional words would add that the defendant was required to know that he couldn't provide services to specially designated nationals. I'm paraphrasing. But that's already here in instruction 24. Five times this instruction uses the term specially designated nationals. Two of those times specifically instruct the jury that U.S. persons cannot provide services on behalf of or for the benefit of specially designated nationals. The defendant's concern during the jury charge wasn't so much the defendant's knowledge that these individuals would designate, but more so that the jury would convict the defendant for violating Zadera, this other economic sanction, this other Zimbabwe. But that wasn't the case. What factors should a court use in determining whether a provision of a statute is an element or simply a means? The wording of the statute itself. And the statute here, which is Title 50, Section 1705, uses the word willfully. But no more than that. It says anyone who willfully conspires to violate these prohibitions. If I may, I think the question goes to the unanimity argument. With regard to the unanimity argument, I make a similar proposal. There's nothing in the statute that says that the jury must find unanimously that the defendant, that they must agree on which particular specially designated national the defendant was providing services to. In the Richardson case, which the defendant cites, that's a continuing criminal enterprise case, where the statute there specifically discusses a series of violations. And the Supreme Court in that case found that a violation is breaking the law. And because it's breaking the law, the jury must find that in fact the defendant broke the law and must find each individual time unanimously. Sorry, I keep tripping up on that word. Unanimously. Thank you. Unanimously, they must find each violation. That's because that language about a continuing series of violations was actually in the statute. We don't have something similar in this statute. This is no different than the jury agreeing that the defendant conspired with someone else, yet not having to agree unanimously with who the defendant was conspiring with. Same goes for overt acts. This particular SDN, specially designated nationals in this case, were a means to the end. The conspiracy as charged was an agreement to provide services to specially designated nationals. Well, you know, I was wondering, Mr. Mbenguegui was identified as an SDN in the indictment, but he wasn't mentioned in relation to count three. So I was wondering why the government sought to add his name. I mean, was there evidence of services provided to him that were not provided to the other SDNs, you know, thus providing another path to conviction? Is that what it was? There was evidence regarding interaction between the defendant and Mbenguegui. Not to the level of his interaction with Gideon Gono or Mugabe. Certainly, his interaction with these individuals varied. But his interactions with them were as a whole. His interactions weren't siloed. He wasn't dealing with one for one purpose and another for a completely different purpose. This was all collectively his efforts working on their behalf to lift sanctions against Zimbabwe. So he started with Mugabe and Gono and worked his way over to Mbenguegui and Moyo, but at all times he was interacting with different ones at different times. It was all part of the conspiracy. So there was interaction with Mbenguegui. And he was in the indictment. He is in count one, and that's incorporated by reference in count three. So the defendant's argument that the indictment was constructively amended is not correct. Further, the defendant certainly had notice of Mbenguegui, in addition to him being in the indictment. And by the way, in the indictment, it does identify him as a specially designated national. The government submitted a healthy Santiago proffer, which discussed Mbenguegui as well. So the defendant knew that the government was going to present evidence regarding the defendant's involvement with Mbenguegui along with the other specially designated nationals that he provided service to along with his co-conspirator. What was the argument about if the defendant commits crime A but not crime B? What was that all about? That was an artfully made by me. And I don't think the point I made, and this was just during a jury conference, not anything that was made to the jury, came out. And what I meant was that the defendant does not have to know he's violating Title 50 Section 1701 et sec. If the defendant believed that he was violating a different citation, as long as he knew that these individuals were prohibited or designated and that he could not provide services to those individuals, then he was violating the law. He knew he was violating the law. Whether he knew it was Title 50 or Title 18, that in effect didn't matter. And that's why the government proposed and the court gave the instruction that is consistent with Brian that a defendant does not have to know the particular law, CFR, or executive order that he's been charged with, as long as he understands his conduct is unlawful. In the sense of not needing to know chapters, subsection, section, et cetera. Exactly. But that's not entirely clear from the text of Jury Instruction Number 26. Again, I think you have to... Jury Instruction 26 is admittedly general, but I think when you read it in context of 24, you get where you need to be. And that is instructing the jury that the defendant had agreed to join this conspiracy with its unlawful purpose of providing services to especially designated nationals. And it's important to note that A, the government presented sufficient evidence that the defendant knew about designations, knew who was designated. For example, there was one interaction with an individual that was an aide to a congresswoman when the defendant was talking about bringing Guinea Gono and others into the United States. And the woman said, we're going to get blowback for... Sorry, I was looking for the quote. Effectively stated that we're going to get in trouble if we bring in some sanctioned officials, we don't want that to happen. And the defendant said, I agree, acknowledging that he knew these individuals were sanctioned. And there's other evidence to that effect as well. Further... In addition to knowing specifically about their designation, he also acted in concealment. As the government outlines in its brief, there were many times when documents that were submitted or emails that were submitted from the defendant to individuals in Zimbabwe would be written with confidential on it, or he told an assistant of his not to let anyone see what he was doing. And he was getting paid. After the wire transfer from Zimbabwe to Ben Israel's bank account was blocked, he attempted to get paid in Zimbabwe, talking about going there to get the payday, or shaking the tree loose. Knowing that if money tried to go to a bank account, it would attract attention. Turning to the consulting agreement, the district court did not abuse its discretion in admitting the consulting agreement as a co-conspirator statement. The circumstances of which that agreement was sent to the bank, coupled with the terms in the agreement, were consistent with the defendant's actions. First, the defendant started this wire when he emailed Ben Israel's assistant telling her to send him Ben Israel's bank account information. And he told her that in conjunction with explaining to her about the first meeting he was setting up between U.S. officials and Zimbabwe officials. She sends him the wire information, and the next thing you know, several days later, a wire for $90,000 hits Ben Israel's bank account. The bank questions the wire. They're suspicious. When they reach out to Ben Israel, what they get in response is this co-conspirator statement done to further the conspiracy. That is to effectuate the payment for setting up that first meeting. The defendant then acted in conformity with the agreement. The agreement calls for setting up meetings in Zimbabwe, setting up meetings in South Africa, and that is in fact what happened. That is what the defendant did. The agreement called for a number of emails where he talked to people, as I said a moment ago, about collecting payments in Zimbabwe. If there are no further questions. I have a question. Um, juror Chisholm, was juror Chisholm punished in any way for his behavior? No. How far along in the trial was it when he was? The jury had the case for roughly an hour at that point. They had the case late afternoon on a Tuesday. It was about an hour later roughly when the note came out from the juror and the judge called us in and then the exchange happened. The judge acted within her discretion under Federal Rule Criminal Procedure 24C when she had a legitimate basis for doing so. She had not released the alternates. She brought in the alternate the next morning, made sure he had not talked about the case with anybody, which he said he had not, and then brought the jury in and instructed the jury to start deliberations anew. So the judge acted completely within her discretion in what she did in that circumstance with a juror who was, as she put it, angry. If there are no further questions, I would ask that the court affirm the defendant's conviction for the reasons stated here and in the government's brief. Thank you. Thank you, counsel. Counsel, as I said, I'll give you a minute for rebuttal. With respect to juror Chisholm, of course he was agitated. He just told the court that he had a funeral to attend and the court said, you have to deliberate tomorrow. That's not a reason for just cause or any reason to excuse him from jury service. We spent a lot of time selecting this particular jury, and with respect to juror Chisholm, he was very favorable to the defense. And just to summarily excuse him, because there was a lot of indications, although not on the record, but there was a lot of indications during the course of the trial. Plus, he met the socioeconomic background which we were looking for. He was an African-American from Inglewood, and this was very an issue in the case. So we felt he was favorable. And there was to summarily excuse him from service because he was agitated because he couldn't go to a funeral. It seems completely inappropriate and an abuse of discretion. With respect to the Mr. Turner was alleged to have conspired to provide services for him. Well, why not just then provide every single name that was specially designated national that was admitted at trial? There was other people not named in the indictment. If it wasn't an element of the offense, the names of the actual people, why not just bring every single individual that he was alleged to have any relationship with? Because they've introduced evidence of every single specially designated national that Turner communicated with. The element of the offense is that he provided services on behalf of these particular individuals. And the jury should have had to unanimously decide that because it is an element of the offense. Thank you, counsel. I would ask that this court reverse Mr. Turner's conviction. Thank you. Thank you. Thanks for both counsel. The case will be taken under advisement. The court will be in recess.